Ali Kourani, 79196054
United States Penitentiary
P. O. Box 1000
Marion, IL 62959

Dear Clerk of the Court

500 Pearl St,
New York, NY 10007

Re: Feinling Complaint and other Proceeding under seal

Please take notice, the attached "complaint for Injustice relief" should be filed under seal. Any correspondence to the Plaintiff from the Court should be filed/sent as attorney-client, or "legal mail open-in presence of inmate". Please give the seal request the urgent and immediate attention and your cooperation is appreciated.

1/26/2024

Ali Kourani.

In The United States District Court
For the Southern District of New York

Ali Kourani, 79196054
          Plaintiff

v.

Department of Justice,
          Defendant

Civil Action No. _____

## Complaint for a Permanent Injunctive Relief

## Nature of Action

1. This action arises from a decision of the United States Department of Justice, the Federal Bureau of Investigation (FBI) and the Executive Office of United States Attorney (EOUSA), to release explicit "Confidential Information" (C. info.) allegedly obtained from the plaintiff here, by a promise of confidentiality, made to him by FBI agents: Joseph Costello and Kerri Shannon and others in DOJ. The DOJ used the confidential information to file a sealed complaint (May 31, 2017, in S.D.N.Y.) against the plaintiff, than to unseal it a week later in a press release. The

defendant used these C. Info. in public hearings,
press, interviews, political propaganda and others.
The DOJ divulged Confidential Information has
caused the Plaintiff irreperable injury and ongoing
unbearable harm.

Plaintiff asks the Court to declare:

(1) The information constitutes confidential information
obtained from a Confidential Source that
is exempt from disclosure under FOIA Exemption
4(B) + 7(D); and

(2) the actions of the United States Department
of Justice, FBI and EOUSA are arbitrary and
capricious under the Administrative Procedure
Act (APA, 5 U.S.C. § 701 et seq;) and constitute
a breach of confidentiality, civil conspiracy
FOIA and other violations.

(3) Plaintiff also asks the Court for a preliminary
and permanent injunction that enjoin the United
States Department of Justice and other federal

2

agencys from using any information obtained from the Plaintiff here, under a promise of confidentiality in any kind of current or further proceedings.

## PARTIES

2. Plaintiff Ali Kourani, was at early times mentioned here, a U.S. Citizen residing in New York City and later times "Political Prisoner" in the captivity of Federal Bereau of Prisons. He is currently imprisoned in the United States Penitentiary, P.O. Box 1000, Marion, IL 62959

3. Defendant United States Department of Justice is a Department of the Executive Branch of the United States Government. DOJ is responsible for and controls Federal Bareau of Investigation (FBI) and Executive Office of United States Attorney (EOUSA).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject

3

matter of this action under:

a. The Freedom of Information Act, 5 U.S.C. § 552 (a)(4)(B), (7)(D) and the Administrative Procedure Act (APA), 5 U.S.C. § 701-706

b. 28 U.S.C. §1331 and The Due Process Clause, to redress the deprivation of rights, under color of federal law, secured by constitution, laws and the treaties of the United States.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(1) and §1391 (e)(1).

## FACTS

6. Early February 2017, Plaintiff had a meeting with his attorney Mr. Mark Denbeaux. In that meeting, Plaintiff and Mr. Denbeaux decided to set up a meeting with the FBI, due to their consistent and relentless demands to meet with the plaintiff to question him.

7. Plaintiff insisted on Mr. Denbeaux that any meeting or communication with the FBI

4

has to strictly confidential.

8. Mr. Kourani reasoned the need of confidentiality because of his circumstances:

a. He had direct and extended family that live in his descending country Lebanon

b. His fear for the safety of his kids, whom he was estranged from

c. His own safety

d. Most importantly the FBI office in New York had leakages.

9. Mr. Denleause called the FBI field office in New York and almost of a month of arrangements he spoke directly with FBI agents Kerri Shannon and Joseph Costello who were familiar with the Plaintiff's name.

10. Attorney Denleause emphasized to the FBI agents (Shannon & Costello) that any meeting or communication with his client has to be confidential and stated same reasons in point-8

5

11- Agents (J.C, K.S) agreed on the confidentiality condition / promise.

12- Agents Costello & Shannon also requested, as it was FBI interest that the Plaintiff keep such meetings and communication confidential and no one knows about it.

13- Agents Costello and Shannon met with the plaintiff and his attorney Denbeaux for the first time in March 23, 2017, at Seton Hall Law School, Newark, New Jersey, where attorney Denbeaux is a law professor.

14. Attorney Denbeaux started the meeting by laying down the foundation for further meetings and communication with his client, plaintiff here.

15- Attorney Denbeaux first corner stone was confidentiality. Attorney Denbeaux and plaintiff emphasized the need to keep any meeting with the FBI secret for the safety of the plaintiff, his family back in Lebanon, and his kids who

6

were with their mother in Canada estranged from their dad.

16. The plaintiff even inquired about who from the FBI office in New York knew about this meeting, since they always had leakage and Plaintiff was stopped, frisked and interrogated so many times by different FBI agents in the previous few months (but never arrested). Agents Costello and Shannon assured Plaintiff & his attorney that only them and their supervisor and his "higher ups" knew.

17. Agents Costello & Shannon demanded as its "higher ups" request that such meetings remain confidential and inquired from the Plaintiff if he told any of his family members or friends specifically his younger brother, who lived in New York, if any knew of this meeting with the FBI. Plaintiff assured the agents that no one knew and no one would do.

7

18 - Attorney Dembeaux laid down the Second corner stone and stated to the agents that whatever his client, Plaintiff, say won't be used against him, he won't be arrested or prosecuted and Plaintiff is a patriotic U.S. Citizen who is trying to help his country. The FBI agents agreed and confirmed. (Later on, the FBI agents denied such promises No. 18, in a suppression hearing and residing Judge Hellerstein ruled in the government favor. Promises in No 18 are NOT the subject of this complaint.

19 - Plaintiff also demanded at the start of the meeting that U.S. government bring his kids who were born in New York, from Canada, allow his Dad and sister back to the United States a other small promises. All such promises were agree on with estimated schedule to execute, after the agents spoke to their supervisors on the phone Such promises are NOT a disputed issue in the complaint and Judge Hellerstein has ruled

8

for the government favor on such grounds.

20. After those foundations were layed down, plaintiff started answering Agents questions.

21. During every meeting, which counted to five, March 23, April 3, 5, 14 & 26, the Agents Costello & Shannon, plaintiff and his attorney talked about the confidentiality status of the meetings and of the measures taken to ensure such secrecy.

22. In one incident, Agent Costello promised the plaintiff to get him a job in his field of study. When the Plaintiff send Agent Costello his resume, the Agent texted back plaintiff's attorney stating that he received Plaintiff resume and he is working on it. Agent stated to the attorney that he won't reply back to the plaintiff email for fear that "others" may have access to it. Agent wanted to make sure that everything remain secret for the safety of the Plaintiff.

23. At one of the meetings, Plaintiff inquired about

"Gary Balbesta who has interrogated the plaintiff before. Plaintiff said to agents Costello and Shannon, in the presence of his attorney, where everybody was sitting around a rectangular shape table, in a conference room in Seton Hall, the following:

Plaintiff: "How is that "bold head" agent doing? does he know about those meetings?"

Agent Costello: "who are you talking about?"

Plaintiff: "You know, the agent you were with when you came to interrogate me in Beirut American Embassy *.* *

Agent Costello: smiled and said "he is good, and no other FBI agents know about this meeting except our supervisor and other "higher ups, we take confidentiality very seriously."

Agent Costello looked at Agent Shannon and said "he, Plaintiff here, is asking about Gary."

Now both agents were laughing and when the plaintiff asked if there were an inside joke, Agent

Shannon replied: "No, its just that Gary is not Bold." Then agent Shannon reassured the Plaintiff about the seriousness to keep such meetings secret and the FBI is very compartmentlezed. Agent Shannon also emphasezed that the Plaintiff should keep such meetings with the FBI very secret for his and his family safety.

** In summer of 2016, Plaintiff U.S passport was confiscated from him by the U.S Embassy in Lebanon, when he was trying to leave Lebanon due to threats to his life. After several inquiries, the embassy called him to come collect his passport, When he got to the embassy FBI agents Costello and Batterta and a CIA-ULV. didn't give him back his passport until they finished interogation.

24. In an another incident, which happened in the last meeting at Seton Hall, Plaintiff asked Agent Costello about the immigration status of his younger brother, who it happened that he had an immigration court hearing the very next day. Agent Costello said that he was just emailing the ICE attorney/agent to have the court date adjourned. Then Agent Costello asked the plaintiff

him will he inform his brother of this adjournment without exposing his meeting with the FBI, to which the agent spontaneously added that you [Plaintiff] say attorney Denbeaux helped you out. "That way all meetings with FBI will remain secret and no suspicion of cooperation will be raised." So said Agent Costello.

25. The weeks following the last meetings, plaintiff's attorney reached out several times to Agent Costello, inquiring on the progress of achieving the promises to his client, to which the government was dragging its feet. But the confidentiality of the meetings was never an issue or brought up.

26. On June 1, 2017, the FBI and the NYPD I arrested the Plaintiff on the street of the Bronx, in a very discreet operation more like kidnapping, the agents were wearing plain clothes using civilian cars.

27. The Plaintiff was taken to One Federal Plaza

where he met AUSA Bove for the first time and Agents Costello & Shannon. Plaintiff questioned the FBI agents of what's happening and why he is being arrested. Both agents assured him, he'll be fine.

28- Plaintiff was given a chance to call his attorney Denbeaux. His attorney was also furious and mad about the arrest as he had already relayed that to AUSA Bove.

29. In th at phone call, Plaintiff attorney resigned of the case and asked the Plaintiff to appoint a Public Deffender.

30. Plaintiff was assigned a public defender Peggy Cross-Goldenberg that same day. Sooner Plaintiff met his new attorney, he discussed with her his fears about his family's safety if the meetings with the FBI was public. To this she assured him the complaint is still sealed.

31. Attorney Goldenberg assured Plaintiff he will be fine, very soon out, and even asked Plaintiff about

his clothes sizes for next day.

32. Plaintiff slept that night in a Hotel, with the FBI agents accompanying him in discreet. (FBI agents made sure no one in public see him handcuffed.).

33. June 2, 2017, Plaintiff met FBI agents Costello & Shannon in the office of AUSA. Plaintiff refused to talk to the agents because of their broken promises.

34. Plaintiff with his attorney Goldenberg met AUSA Bove Amanda Houle and the agents Costello and Shannon. Plaintiff entered a proffer agreement, answered the prosecutor questions and denied other ungrounded allegations.

35. AUSA Bove was on/off the phone with DOJ officials in Washington, D.C. all the time.

36. After the meeting, Plaintiff was arraigned in discreet and taken to Metropolitan Correction Center (MCC), where he was placed in special housing unit by himself.

37. A week after the arrest, Plaintiff complaint

was unrealed, with no any regard to the promise of confidentiality, to the law, the safety of the plaintiff and his family and the prospect of anyone trusting the government. The complaint was only based on what was allegedly said in the "confidential five meetings" at Seton Hall. The complaint was a total distortion of the reality of the five confidential meeting.

38. Late June, 2017 the Plaintiff was indicted. The Plaintiff even though went trial later on. never received the grand Jury minutes, even upon his ongoing request.

39. After appointing a new attorney, "Alexei Schacht", Plaintiff moved the court to supress his alleged statements from the five confidential meetings.

40. After agents Costello & Shannon, attorney Denlea and Plaintiff took the stand and they all testified that confidentiality was promised and reяced on, Judge Hellerstein denied the motion

15

based on the totality of circumstance of the questioning.
(Even though, Military Courts consider a promise of
confidentiality as base for admission is inadmissable
as evidence since a promise of confidentiality nullifies
any warning that the statement may be used against
the person and such promise overburden the person's
will)

41. Judge Hellerstein still aknowledged that confidentiality of cooperation was promised to the plaintiff here
by the FBI agents "but" it was a confidentiality
from Lebanese community in Lebanon and abroad.
Judge Hellerstein never gave a remedy for the
broken promise of confidentiality as he aknowledged

42 On direct appeal, even after the FBI agents testified
to the secrecy of the Plaintiff cooperation during trial
, the 2nd Circuit Court did NOT even address the
subject of "confidentiality of the meetings? Even
though the Plaintiff in his supplemental brief
made it clear if it wasn't for the promise

16

of confidentiality he would have never talked to the FBI. Plaintiff here, added that the promise of confidentiality meant <u>no one</u> was supposed to know about it other than the party (FBI agents) who gave such promise.

43. On July 9, 2022, the Plaintiff filed a motion to Judge Hellerstein to reconsider his motion to suppress statements from the five confidential meetings in the light of Supreme Court decision on June 24, 2019 [Food Marketing Institute v. Argus Leader Media, 139 S. Ct. 2356; 204 L. Ed. 2d. 742, 2019 U.S. Lexis 4200]. In that decision the Supreme Court construed the word "confidential": "meaning private or secret --- In another sense, information might be considered confidential only if the party receiving it provides <u>some</u> assurances that it will remain secret (Gorsuch, J. - joined by Roberts Ch. J. , and Thomas, Alito, Kagan, and Kavanaugh JJ.)". Judge Hellerstein didn't rule on

17

that motion yet.

44. In addition, a promise of confidentiality litterally nullifies any other warnings of what could be said can be used against its sayer in the court of law.

45. The Plaintiff has no adequate remedy at law to prevent the infliction of this irreparable injury.

46. If the defendant is enjoined as requested, neither they nor any other person will suffer any harm as a result.

47. Unlikewise, if this Court doesn't reinstate the defendant's promise of confidentiality, by enjoining them from using such confidential information, the credibilty of U.S government and its agencys is chaltered beyond repair, specifically the FBI. Also will subject other court orders where the confidentiality of informations and sources is protected by FOIA exemption 7(D) to be revisited and reargued.

18

48. Protecting information secured by a promise of confidentiality will serve the public interest and most importantly the National Security interest.

49. The public interest requires that the defendant enjoined from further using the plaintiff's alleged disclose information under a promise of confidentiality, in order to vindicate the public policy contained in exemption (b)(4)(B) & (b)(7)(D) of FOIA, 5 U.S.C. § 552 (b)(4), (7)(D), the prohibition in United States Constitution against violation of due process clause and other laws and the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et. seq, " foolish consistency may be the holgobten of little mind ... whether foolish or not ... is well rooted attempt in Admenistrative Procedures Act. A long line of precedent has established that an agency action is arbitrary when agency offers insufficient reason for treating similar situations differently."

19

# COUNT I
## (Reverse - FOIA)

50. Plaintiff incorporates the preceding allegations.

51. The information at issue is confidential information exempt from disclosure and protected under FOIA laws and Exemptions 4(B) & 7(D)

52. Released of the confidential information by DOJ is therefore not in accordance with law under section 706 of the APA, 5 U.S.C. §706.

# COUNT II
## (Breach of Confidentiality)

53. Plaintiff incorporates the preceding allegations.

54. FBI agents Joseph Costello, Kerri Shannon & others, AUSA Emil Bove II, Amanda Houle & others share a duty in their official capacity as the employees of DOJ to honor their promise of confidentiality to the plaintiff and their breach to such promise is a violation of the 28 U.S.C. § 1331, the Due Process Clause and law of U.S.

20

# COUNT III

## (Arbitrary and Capricious Agency Action)

55 Plaintiff incorporates the preceding allegations.

56. DOJ did NOT comply with its own regulations, in releasing confidential information obtained from a confidential source and threatening his life, his family's life and other US citizens lifes. Plaintiff objected to the release of the confidential information and the DOJ never complied.

57. The decision by the DOJ to release the confidential information is arbitrary & capricious under section 706 of APA, 5 U.S.C § 706

# COUNT IV

## (Civil Conspiracy Under New York State laws)

58. Plaintiff incorporates the preceding allegations.

59. The FBI agents and the AUSA and others in New York engaged in a civil conspiracy to retaliate against the Plaintiff and his family for refusing to be "informants", certify misleading statements

that can harm the National Security of the U.S. and for reasons related to race, religion and political views of the Plaintiff.

## COUNT II

### (free from Cruel + Unusual Punishment Under) Eighth Amendment

60. Plaintiff incorporates the preceding allegations.

61. Defendant DOJ by releasing the confidential information subjected the Plaintiff and his family to imminent and on going life threatening situations.

## COUNT III

### (Declaratory Judgment)

62. Plaintiff incorporates the preceding allegations.

63. This Court has authority pursuant to 28 U.S.C. §2201 to declare rights of Plaintiff with respect to the confidential information at issue. The Court has authority pursuant to 28 U.S.C. §2202 to award all necessary and proper relief in accordance with its declaratory judgment.

22

64. Plaintiff is entitled to a declaration as follows:

a. The information at issue is confidential information allegedly was voluntary provided to the FBI/EOJ on a promise of confidentiality, was never disclosed by the Plaintiff to anyone before, and is therefore protected by FOIA Exemption (4)&(7), 5 U.S.C. § 552 b(4)(B), (7)(D).

65. The decision of DOJ to release such confidential information is arbitrary, capricious, life threatening and otherwise contrary to law in violation of APA , 5 U.S.C. §§ 701-706, the Due Process Clause, and other laws Court see suitable.

66. The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which Plaintiff seeks.

## Prayer for Relief

WHEREFORE, Plaintiff asks the Court to:

1. Declare that information at issue is confidential information, obtained by a promise of confidentiality, from a confidential source (Plaintiff here), and was always kept confidential by plaintiff, and therefore is protected by FOIA Exemptions, and its use as an open source and its release to the public caused substantial harm and life threatening situations to the Plaintiff and his family AND the National Security of the U-S by threatening existing and future confidential sources of important information.

2. Declare that the DOJ decision to release the information at issue is arbitrary, capricious and contrary to law in violation of APA, 5 U.S.C. §§ 701-706, the Due Process Clause and other laws.

3. Permanently and immediately enjoin the DOJ

24

and others, and their officers, agents, and employees and those acting in concert with them, from disclosing the information at issue,

4- Enter a temporary restraining order and preliminary injunction,

5- Compensatory damages in the ammount of $150,000,000 against defendant.

6- Punitive damages in the ammount of $150,000,000 against defendant

7- A Jury trial on all issues triable by jury.

8- Plaintiff's cost in this law suit.

9- Any additional relief this court deems just, proper, and equitable.

Dated: 1/26/2024

Respectfully submitted

Ali Kourani, 79196054
United States Penitentiary
P.O. Box 1000
Marion, IL 62959.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF *New York*

ALI KOURANI, #79196054

Plaintiff,

V.

*Department of Justice*,

Defendant,

SUMMONS
Civil Action No._____


TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon plaintiff , whose address is USP Marion, P.O. Box 1000, Marion, IL 62959, an answer to the complaint which is herewith served upon you, within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Clerk of the Court


Date:_____

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the
### SOUTHERN DISTRICT OF *New York*

| | |
|---|---|
| ALI KOURANI, | ) |
| *Plaintiff/Petitioner* | ) |
| v. | )    Civil Action No. |
| Department of Justice | ) |
| *Defendant/Respondent* | ) |

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: United States Penitentiary, Marion, IL
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name. I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.* If I am employed, my employer's name and address are:

My gross pay or wages are: $ _____ , and my take-home pay or wages are: $ _____ per

*(specify pay period)* _____

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | |
|---|---|---|
| (a) Business, profession, or other self-employment | ☐ Yes | ☒ No |
| (b) Rent payments, interest, or dividends | ☐ Yes | ☒ No |
| (c) Pension, annuity, or life insurance payments | ☐ Yes | ☒ No |
| (d) Disability, or worker's compensation payments | ☐ Yes | ☒ No |
| (e) Gifts, or inheritances | ☐ Yes | ☒ No |
| (f) Any other sources | ☐ Yes | ☒ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4. Amount of money that I have in cash or in a checking or savings account:  $   None

5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instr thing of value that I own, including any item of value held in someone else's name (describe the property and its value):
N/A

6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses (describe a the amount of the monthly expense):
N/ A

7. Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relations with each person, and how much I contribute to their support:         N/A

8. Any debts or financial obligations (describe the amounts owed and to whom they are payable):

I have approximately $50, 000.00 in unpaid student loans owed at this time.

Declaration: I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date:   1 /26/202 4

_____
Applicant's signature

Ali Kourani #79196054
Printed name

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### PRISONER TRUST ACCOUNT REPORT

Name: _Ali Kourani_   Registration
#: _7919605 4_

Please submit this to the trust officer of every institution in which you have been confined during the preceding six months. Submit the completed forms and supporting ledger sheets to the Court.

*********************************************************************

To:    Trust Officer
From:   Clerk, U.S. District Court for the District of Columbia

Under the Prison Litigation Reform Act (PLRA), a prisoner filing a civil action must obtain from the trust officer of each institution in which the prisoner was confined during the preceding six months a certified copy of the prisoner's trust account statement for the six months prior to filing of the action. 28 U.S.C. § 1915(a)(2).

Please complete this form, attach the supporting ledger sheets, and return these documents to the prisoner.

BALANCE at time of filing of the action:                    $3.85

AVERAGE MONTHLY DEPOSITS during the
six months prior to filing of the action:                   $153.70

AVERAGE MONTHLY BALANCE during the
six months prior to filing of the action:

I certify that the above information accurately states the deposits and balances in applicant's trust fund account for the period shown and that the attached ledger sheets are true copies of account records maintained in the ordinary course of business.

Date: _9-26-23_

Authorized Signature: _____

Title: _Counselor_

## Inmate Inquiry

**PRINT**

| | | | |
|---|---|---|---|
| Inmate Reg #: | 79196054 | Current Institution: | Marion USP |
| Inmate Name: | KOURANI, ALI | Housing Unit: | MAR-X-A |
| Report Date: | 09/26/2023 | Living Quarters: | X01-113L |
| Report Time: | 10:06:55 AM | | |

General Information  |  Account Balances  |  Commissary History  |  Commissary Restrictions  |  Comments

## General Information

| | |
|---|---|
| Administrative Hold Indicator: | No |
| No Power of Attorney: | No |
| Never Waive NSF Fee: | No |
| Max Allowed Deduction %: | 100 |
| PIN: | 0643 |
| PAC #: | 628631651 |
| Revalidation Date: | 19th |
| FRP Participation Status: | Participating |
| Arrived From: | OKL |
| Transferred To: | |
| Account Creation Date: | 6/2/2017 |
| Local Account Activation Date: | 3/19/2021 3:12:16 AM |
| Sort Codes: | |
| Last Account Update: | 9/19/2023 12:11:55 AM |
| Account Status: | Active |
| Phone Balance: | $0.00 |

### Pre-Release Plan Information

| | |
|---|---|
| Target Pre-Release Account Balance: | $0.00 |
| Pre-Release Deduction %: | 0% |
| Income Categories to Deduct From: | Payroll          Outside Source Funds |

### FRP Plan Information

| FRP Plan Type | Expected Amount | Expected Rate |
|---|---|---|
| | | |

## Account Balances

| | |
|---|---|
| Account Balance: | $3.85 |
| Pre-Release Balance: | $0.00 |
| Debt Encumbrance: | $0.00 |
| SPO Encumbrance: | $0.00 |
| Other Encumbrances: | $0.00 |
| Outstanding Negotiable Instruments: | $0.00 |
| Administrative Hold Balance: | $0.00 |
| Available Balance: | $3.85 |
| National 6 Months Deposits: | $153.70 |



Ali Kourani
79196054
United States Penitentiary
P.O. Box 1000
Marion, IL 62959

1/26/2024

"31 Legal Pages"

"Legal Mail" criminal

2/5/24

RECEIVED
CLERK'S OFFICE
S.D.N.Y.

CERTIFIED MAIL

7021 2720 0001 8199 2838

USMP3
DNY

U.S. District Court-
Clerk of the Court
500 Pearl St.
New York, NY 10000

<79196-054>
Clerk Of The Court
S. District OF NEW YORK
500 Pearl ST